Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Asociación De Residentes De River Garden, Inc.<br><br>**Recurrida**<br><br>V.<br><br>Orlando Jovany Cepeda Matos<br><br>**Peticionario** | TA2026CE00665 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm. CN2026CV00016<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de junio de 2026.

El 25 de mayo de 2026, el Sr. Orlando Jovany Cepeda Matos (señor Cepeda o el peticionario) compareció ante nos mediante *Certiorari* y solicitó la revisión de una *Resolución Interlocutoria* [...] que se emitió el 25 de abril de 2026 y se notificó el 27 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Solicitud de Desestimación* que presentó el señor Cepeda.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

I.

El 16 de enero de 2026, la Asociación de Residentes de River Garden, Inc. (Asociación o la recurrida) presentó una *Demanda Jurada* sobre entredicho provisional, injunction preliminar y permanente, violación a condiciones restrictivas y sentencia declaratoria contra el señor Cepeda.[1] Alegó que el peticionario

---
[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

realizó y continuaba realizando obras de construcción, modificaciones y ampliaciones en su residencia sin la previa aprobación del Comité Arquitectónico, en violación de las condiciones restrictivas y servidumbres en equidad que gravaban la urbanización. Sostuvo que, aunque el señor Cepeda obtuvo un permiso de construcción de la OGPe, dicho permiso no invalidaba las restricciones privadas aplicables.

Expresó que el peticionario fue requerido en varias ocasiones para detener las obras y someter la documentación necesaria para evaluación, pero continuó la construcción sin obtener autorización. Adujo que las obras alteraban sustancialmente la fachada, volumetría y diseño original de la residencia, afectaban la armonía arquitectónica de la comunidad, impactaban propiedades colindantes y podrían alterar la topografía y otros elementos del entorno.

Ante el avance de las obras y la inminencia de nuevas fases constructivas, solicitó un entredicho provisional e interdictos para paralizar los trabajos, exigir la demolición de las construcciones no autorizadas, ordenar la restauración de la propiedad a su estado original y requerir la presentación del proyecto ante el Comité Arquitectónico. Además, reclamó gastos, costas y honorarios de abogado por la alegada conducta temeraria del peticionario.

Así las cosas, el 21 de enero de 2026, el TPI emitió y notificó una *Sentencia Parcial.*[2] En esta, concluyó que las alegaciones de la Demanda no justificaban la concesión de un interdicto provisional, particularmente sin brindarle al peticionario la oportunidad de expresarse. En consecuencia, desestimó la solicitud de interdicto provisional presentada por la recurrida.

---

[2] *Véase*, Entrada Núm. 6, SUMAC TPI.

Posteriormente, el 5 de febrero de 2026, el señor Cepeda presentó su *Contestación a Demanda.*[3] En esta, negó haber violado las condiciones restrictivas de la Urbanización River Garden y sostuvo que las obras realizadas en su propiedad cumplían con la Escritura Núm. 30 otorgada el 5 de febrero de 2003 sobre restricciones de uso y edificación y contaban con permisos de construcción. Alegó que la Asociación y el Comité Arquitectónico carecían de legitimación y autoridad para reclamar sobre el remanente sobrante de la propiedad y para representar a los miembros de la Asociación en este pleito.

Asimismo, sostuvo que la Asociación incurrió en incuria al esperar hasta que las obras estuvieran avanzadas para acudir al Tribunal solicitando remedios urgentes. Expresó que sometió los documentos que entendió necesarios, incluyendo planos y permisos, y que las comunicaciones iniciales de la Asociación no especificaban claramente toda la documentación requerida. También alegó que posteriormente la Asociación exigió requisitos irrazonables, como planos 3D.

Asimismo, negó que las construcciones alteraran la armonía arquitectónica, la volumetría, la estética de la urbanización o servidumbres de luces y vistas, y sostuvo que la Escritura Núm. 30 no prohibía la ampliación de la huella de la residencia ni contemplaba los conceptos de fachada posterior o lateral. Además, negó que las obras ocasionaran daños permanentes, afectaran estructuras colindantes o alteraran indebidamente la topografía.

Por otro lado, indicó que la Asociación incumplió con el Reglamento al no agotar remedios internos ni imponer multas antes de presentar la demanda judicial. Negó haber actuado con temeridad o contumacia y sostuvo que siempre estuvo dispuesto a

---

[3] *Véase*, Entrada Núm. 19, SUMAC TPI.

continuar el proceso ante el Comité Arquitectónico y participar en mediación. Como defensas afirmativas, alegó, entre otras, falta de legitimación de la Asociación, falta de causa de acción, prescripción y/o caducidad, falta de parte indispensable, inexistencia de daños, falta de mitigación de daños y actuación temeraria de la Asociación.

Luego de varios trámites procesales que no son necesarios discutir, el 17 de febrero de 2026, el peticionario presentó una *Solicitud de Desestimación.*[4] En esta, solicitó la desestimación de la *Demanda Jurada* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 alegando que la Asociación carecía de legitimación activa, que no existía una controversia justiciable y que no se alegó un daño real, concreto e inminente.

Particularmente, sostuvo que la Asociación no demostró contar con el consentimiento expreso de sus miembros para presentar el pleito, según lo requería la Sección 6.0 del Reglamento de Normas, Administración y Sana Convivencia de la Urbanización River Garden, la cual disponía la celebración de una Asamblea Extraordinaria para asuntos que requirieran la aprobación de los miembros activos de la Asociación.

Asimismo, sostuvo que la Asociación carecía de legitimación para reclamar sobre el remanente sobrante de la parcela colindante con su propiedad, ya que la Escritura Núm. 30 excluía expresamente de las condiciones restrictivas las áreas dedicadas al uso público y el remanente sobrante de la parcela. Argumentó que el único con legitimación para reclamar sobre dicho remanente sería su titular, identificado como Desarrolladores Urbanos (Canóvanas) LLC.

Además, alegó que la Asociación incumplió con el procedimiento dispuesto en la Sección 12.0 del Reglamento, al no

---

[4] *Véase*, Entrada Núm. 36, SUMAC TPI.

agotar los remedios administrativos antes de acudir al Tribunal. Sostuvo que la Asociación no emitió ni notificó los informes y avisos requeridos por el Reglamento antes de referir el asunto a sus abogados y presentar la demanda. Indicó también que la multa fue impuesta luego de iniciado el pleito y alegó que se le aplicó un trato distinto y más riguroso que a otros residentes. Por ello, solicitó que el Tribunal desestimara la *Demanda Jurada* por falta de legitimación activa, falta de capacidad representativa y falta de agotamiento de remedios administrativos reglamentarios.

Por su parte, el 19 de febrero de 2026, la Asociación presentó una *Oposición a Moción de Desestimación*.[5] Alegó que la solicitud de desestimación del señor Cepeda carecía de base jurídica y sostuvo que sí tenía legitimación activa para presentar el pleito y reclamar el cumplimiento de las servidumbres en equidad y condiciones restrictivas de la Escritura Núm. 30. Sostuvo que las asociaciones de residentes podían instar acciones de *injunction* para hacer valer restricciones y representar a los titulares afectados, sin necesidad de probar daños reales, bastando demostrar la alegada violación a las restricciones.

Además, indicó que la Escritura Núm. 30 expresamente le reconocía legitimación activa a la Asociación, al Comité Arquitectónico y a los propietarios para exigir judicialmente el cumplimiento de las condiciones restrictivas. Rechazó que fuese necesaria una Asamblea Extraordinaria o el consentimiento expreso de los residentes para presentar la *Demanda Jurada*, argumentando que el Reglamento invocado por el peticionario aplicaba a asuntos administrativos y no a este tipo de reclamación judicial.

Asimismo, adujo que el remanente de la finca continuaba sujeto a las condiciones restrictivas de la finca matriz y que, por ello,

---

[5] *Véase*, Entrada Núm. 46, SUMAC TPI.

conservaba las servidumbres en equidad que afectaran los predios segregados y el remanente. Indicó que dicho remanente colindaba con propiedades de miembros de la Asociación y con áreas de River Garden, por lo que tenía legitimación para velar por el cumplimiento de las restricciones.

En cuanto al agotamiento de remedios reglamentarios, expresó que sí realizó gestiones previas antes de acudir al Tribunal, incluyendo notificaciones y reclamaciones extrajudiciales al peticionario. Además, señaló que posteriormente se emitió un aviso de multa, por lo que el planteamiento del señor Cepeda sobre falta de agotamiento de remedios se tornó académico. Añadió que el remedio de multa era inadecuado y fútil frente a la magnitud de la construcción impugnada. Por todo ello, solicitó que se declarara No Ha Lugar la solicitud de desestimación presentada por el señor Cepeda.

Posteriormente, y en torno a la misma controversia relacionada con las condiciones restrictivas objeto del caso CN2026CV00016, el señor Cepeda presentó una Demanda sobre sentencia declaratoria y daños y perjuicios, identificada con el alfanumérico CA2026CV01264. En consecuencia, el 27 de abril de 2026, el TPI ordenó la consolidación de ambos casos.[6]

Evaluadas las posturas de ambas partes en cuanto a la solicitud de desestimación, el 25 de abril de 2026 el TPI emitió una *Resolución Interlocutoria* […] que se notificó el 27 de abril de 2026 en la cual declaró No Ha Lugar la *Solicitud de Desestimación* que presentó el señor Cepeda.[7] Inconforme con este dictamen, el 25 de mayo de 2026, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al denegar una desestimación, fundamentada en cuestionamientos**

---

[6] *Véase*, Entrada Núm. 82, SUMAC TPI.
[7] *Véase*, Entrada Núm. 83, SUMAC TPI.

**de justiciabilidad y jurisdicción, a través de una Resolución en la que no consignó fundamento alguno, en clara violación al debido proceso y al derecho de revisión judicial de la parte peticionaria.**

**Erró el Tribunal de Primera Instancia al descartar los argumentos sobre falta de parte indispensable, aun cuando la escritura de servidumbre en equidad claramente dispone que el remanente no le compete a la Asociación de Residentes.**

**Erró el Tribunal de Primera Instancia al concluir que la Asociación de Residentes de River Garden tiene legitimación activa para hacer valer unas condiciones restrictivas que no tienen eficacia alguna.**

Atendido el recurso, el 26 de mayo de 2026, emitimos una *Resolución* concediéndole a la recurrida hasta el 5 de junio de 2026 para presentar su postura en cuanto al recurso. Oportunamente, la Asociación presentó su *Memorando en Oposición a la Expedición del Auto de Certiorari* y negó que el TPI cometiera los errores que el señor Cepeda le imputó. Con beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción.

Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

III.

Luego de examinar la totalidad del expediente ante nuestra consideración, a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido. Ello, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

Además, reiteradamente se ha resuelto que quien acude ante un tribunal apelativo cuestiona el dictamen, no los fundamentos que lo sustentan. *Pueblo v. Pérez,* 159 DPR 554, 566 (2003). Por ello,

aun cuando la parte peticionaria discrepe de algunas de las expresiones o razonamientos empleados por el TPI, ello no justifica nuestra intervención mientras el resultado alcanzado sea correcto en derecho y no se haya demostrado la existencia de alguno de los criterios que ameritan la expedición del auto solicitado.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones